We'll move on to the next case, Mourabit v. Klein. Good morning, and may it please the court, my name is Mark Moody, counsel for appellant Sammy Mourabit. At issue in the case so far is whether makeup artistry is copyrightable and that's subject to 17 U.S.C. 301A's complete preemption, or whether it is uncopyrightable and therefore exempt from preemption pursuant to 17 U.S.C. 301B1. Do we actually need to decide that issue about makeup artistry? Because there was a photograph and a drawing, and those would be subject to copyright, even assuming makeup artistry is not. Is that not so? If I understand your question correctly, Your Honor, the answer is no. It's rather like the Kelly case out of the Seventh Circuit, where the underlying conduct itself is not copyrightable. But you can design a piece of paper that would represent the underlying design for the copyright for the makeup artistry in this case, which would be copyrightable and therefore would provide copyright protection. But it doesn't provide protection against the use made in the photograph, and the makeup artistry itself as applied is not under any circumstances copyrightable. So, for that reason... Excuse me, isn't your claim that it is copyrightable still in your amended complaint? Didn't you start out by alleging that it was copyrightable and your copyright had been breached? I did start that out, but that was, as was explained in great detail to the lower court, the copyright was issued as what can best be described as a strategic error. And so that line of inquiry, in my view, Your Honor, is not relevant. The copyright infringement claim was withdrawn in the lower court almost immediately, and the respondent declined to accept its withdrawal, which was absolutely within their right, no doubt. And so the issue remains, and the issue before this court is whether or not makeup artistry is copyrightable. Now, appellant posits that it's not copyrightable for three distinct reasons, each of which, any one of which, if the court concludes that appellant is correct, would require the lower court to be reversed and the remaining state law causes of action remanded to state court. It is fundamental that in order to be preempted, a work must be both fixed in a tangible medium of expression and fit within the general subject matter of copyright. If a work does not meet both of these criteria, then it is not preempted by Section 301A and is in fact expressly excluded from preemption by 301B1. Indeed, if Congress had meant every equivalent to be preempted, there would have been no need to enact 301B, much less four separate sections of 301B. The three reasons that I refer to are, first, the human face, or more broadly, skin, is plainly not a tangible medium of expression within the meaning of the act. While tangible medium of expression is not defined in the act, the phrase itself and its use by Congress in the statute makes clear that a face or skin was not within Congress's contemplation. The phrase is qualified further demonstrating this by the clause, now known or later developed, that notion of development surely can't be applied to a human being's skin. Appellant submits to the live animal, much less the human, was never within Congress's contemplation as a tangible medium of expression. At the very least, if Congress intended such a radical policy, we should expect to find some indicative language in either the statute itself or the legislative history, and there is none. It is worth noting on this point that under oath in the Whitmilled Tattoo case, Professor Nimitz stated his opinion that, quote, live bodies do not qualify as a medium of expression sufficient to ground copyright protection. Second, make-up artistry cannot satisfy the duration requirement. It cannot be said to be fixed in a tangible medium of expression for more than transitory duration. All make-up is, by definition, non-permanent. The make-up artistry at issue here is far less so. It is high fashion and only lasts momentarily. Nor can it be said to be fixed in anything. It is only placed on. Why isn't it sufficient that it is captured in a photograph? Because that would—for two reasons, Your Honor. First of all, that would render everything that a photograph captures instantly copyrightable just because the photograph captured it. But secondly, that, I think, is a theory that is precluded by this court's decision in Cartoon Network where it went to pains in explaining the MAI cases out of California. This court went to pains to explain that if the California court had believed that more than transitory duration would have been left out of the copyrightability equation, then they would have said so and wouldn't have just ignored the statute. So Cartoon Network precludes us from saying the mere snap of a photograph, 1 250th of a second, satisfies the transitory duration requirement. You have one minute. Finally— I just want to clarify. Could I ask a question? I just want to make sure that I'm right, that your client did consent to the taking of the photograph of his make-up work on the actress. Is that correct? He did, yes. Okay, thank you. He consented to it for the minimal purpose of publication in a W editorial. He certainly did not consent to it for the use in subsequent commercial activity for somebody else's make-up line. Nonetheless, that photograph fixed his expressive work for purposes of allowing us, at least, to look at it now, right? Well, I think, Your Honor, if I may, the problem is that your use of the phrase expressive work under 102A5 of the Copyright Act definitively sets forth categories of work that are copyrightable, and that is admittedly a general list and not limited to. But 102A5 is the only one they rely upon, and it's a pictorial, graphic, or sculptural work. I don't think anybody can reasonably say that make-up artistry fits into that. And then if you read 17 U.S.C. 101's definition of pictorial, graphic, or sculptural work, it underscores and hardens the notion that make-up artistry does not fit within 102A5. Expressive work seems to be a phrase that is beyond the purview of 102A5. Finally, do I have any time left? Yeah, you're out of time, but go ahead. Finish your thought, and you have some time for rebuttal as well. Well, my thought will take more than the time you're going to be willing to give me. I just want to underscore the fact that these are three issues of clear first impression, never to have been considered by any court in the United States. All right. Thank you. We'll hear from the appellee. Yes. Good morning, Judges Carney, Parker, and Chin. May it please the court, my name is Ralph Cathcart. I'm counsel for the appellees, Francois Nars, and the named Shiseido corporate entity. Your Honors, we submit the appeal should be denied and the lower court's preemption of the two state law claims should be affirmed based on clear legal precedent, the Copyright Act itself, and its legislative history. Despite appellant's contention to the contrary, this appeal implicates no issues of first impression. Here, appellant's appeal is limited to the issues concerning the subject matter prong of Section 301A preemption. And as this court held in Briarpatch, in order to preempt state law claims, the claim has to fall within the types of works protected under Section 102, which is the subject matter prong, and they have to vindicate equivalent intellectual property rights enumerated in Section 106, and that's the general scope prong. Now, the appellant has waived the general scope prong for purposes of this appeal, and so the narrow issue is whether the court below correctly preempted the unjust enrichment and misappropriation claim. Now, it is central and important, and the court's touched on it just before, that if you look at the complaint, we're constrained to do so as this is an appeal from a 1236 motion to dismiss. The appellant specifically relied on his fixed and copyrighted drawing for his makeup design, which he claims the client photograph at issue infringed. He also, as exhibits to his complaint, attached... Can I ask a question about the drawing? I thought the record was unclear about when the drawing was created in relation to when the photograph was done. There was some discussion about that, but in this case, the appellant is claiming that he applied makeup during a photo shoot where he was hired to apply makeup. That was his sole duty, and he knew that that photograph would be published by our co-defendant client. He claims that, appellant, that the infringement occurred in 2015, so that's two years after this photo shoot. Claiming the makeup artistry was fixed, whether the drawing was created in 2013 or 2014, but that issue, I don't think, is determinative on the issues for which the appellant appeals. The alleged infringement is what? Use of the photograph? Correct. He says that the fixed photograph infringes his drawing, his copyrighted drawing, and it infringes his makeup artistry. There isn't an argument that in 2015 they were somehow using the act of putting on the makeup. What they were showing was the makeup as reflected in the photograph. Right, but as I said, the issue of the fixation in the drawing, if we look at the complaint, the complaint alleges that the client photograph infringed not only the drawing, but it infringed the makeup that he applied, that was but one element of many for which he and many other vendors were hired to provide at the photo shoot. Even in the Baltimore Orioles case, in an analogous situation, it says once the performance is reduced to tangible form, there is no distinction between the recording and the performance under 301A. Well, here, really the way we should be looking at this is the appellant was, the only reason he was at the photo shoot is he was hired to help out with the photo. And that is the work that we're looking at. And so, as in any high fashion photo shoot, editorial photo shoot, or even a motion picture, every vendor that helps, whether they are a hairdresser or a makeup artist or a clothing or wardrobe designer, they don't have some intellectual property right in the resultant photo. The author owns that photo and has the exclusive right to display it, to reproduce it, etc. Accepting plaintiff appellant's position here would essentially eviscerate copyright law and say that anybody that contributed anything to a drawing, to a photo that was fixed, could then somehow prevent the actual copyright owner of the photo to use it. And that's just absurd. That's not the law. And it is, you know, as I said, we have precedent. The Carroll case here in the Southern District in the court below expressly held that copyright, that makeup artistry is copyrightable, and so has a sister case in California. So this isn't a case of first impression. And moreover, you know, the appellant makes reference to tattoo cases, which I think are instructive. Not one tattoo case has held that the artistry applied to the skin is somehow precluded under the Copyright Act. In fact, the Copyright Act takes pains to say that any medium can be used as long as it's sufficiently stable so that, you know, it can be copied or perceived or communicated. You know, also the legislative history of the Copyright Act says that the broad language makes no difference as to the form, manner, or medium of fixation. House Rep. Number 94. So when you look at, you know, analogous cases, for example, the Whitmill case that dealt with the Mike Tyson facial tattoo, the court scoffed at the idea that a tattoo would not be copyrightable according to a declaration submitted by NMR. Now, as a fellow copyright professor, you know, I respect NMR, but NMR's positions have been discounted by many circuit courts and district courts. And in fact, in this circuit, we reject his, you know, holding on joint authorship. We adopted the Goldstein, you know, theory for joint authorship. And so, you know, referring to a scholar that had an idea that was rejected by another court in another circuit does not seem to me to be especially persuasive. In this case, where we have clear precedent that copyright, that makeup artistry is copyrightable, we have a complaint that on its face says that the client photograph infringes a fixed and registered drawing of the makeup designs, and that the fixed photograph somehow infringes unarticulated intellectual property rights of the appellant who was only there merely to assist in completing the photograph that is owned by the author. And so, you know, we think based on the clear precedent that makeup artistry is copyrightable, based upon analogous cases that have held that artistry on the skin is copyrightable, we can look right here to the Solid Oak sketching case versus 2K Games, which dealt with LeBron James' tattoo in a video game. One minute. One minute, by the way. And the Southern District went through a thorough copyright analysis, never once questioning whether the makeup artistry on skin was outside of the scope of copyright law and upholding that it was, that the use was de minimis and, you know, fair use under the Copyright Act applied. What is your response to Professor Zimmer's concerns about the enforceability of such a holding? So in terms of the enforceability, I think it's, for this particular case, for makeup artistry, it's totally unrelated, because the makeup artistry is to be applied. I am aware of that, but to the extent that the implication is that the skin is a tangible medium, and therefore the tattoo also is artistry fixed in a tangible medium, he expressed some concerns that struck me as plausible. Do you think we would have to address those? I don't think, his concerns about whether they implicated badges, badges and incidents of slavery, I think is fairly outrageous. Not one court in the United States has adopted. But before you get to what they would imply, the badge of slavery or not, the question is, using the usual bundle of rights that copyright confers, do you have concerns about whether one could require the removal of a tattoo, or require the removal of a tattoo that was over-layered and distorted the original work, for example? I mean, there are some legitimate questions that one could raise about what holding that skin as a tangible medium actually implies. Judge Carney, that's a great question, and I would submit to you that those issues were treated in those cases for tattoo cases, which are different in the sense that the artistry is injected. But what I would say to you is that none of those concerns would be covered here, because obviously the subject of the makeup artistry contends to reduce, you know, it's, there's an implied license there, and the makeup is removed, so there's no possibility of subsequent. So your answer is not this case? I'm sorry? Your answer is that that's not this case. That's not this case. All right, thank you. We'll hear from Mr. Pelosi. Your Honor, I think Mr. Pelosi waived any argument. Okay, my notes indicated three minutes for him, but, so I'm not sure whether you, did you use up ten minutes, or did you use up seven minutes? No, I think I still have a little bit of time. I would also like to add, in response to Judge Carney, if I could, that Judge Nimitz's position not only is adopted by any other commentator, whether it's Patriot, Goldstein, or any other court, but in fact, he has flip-flopped on that position over the course of the last seven to ten years, and admittedly said so. So I don't think that we have to, you know, slavishly follow Professor Nimitz in what is almost kind of a rumination about whether or not, in the context of tattoos, other wholly, you know, inapplicable issues that not raised in this appeal are determinative. Also, I'd like to just, you know, underscore the fact that this fixation issue, clearly it's fixed, okay, it's fixed for sufficient time, as the court has, this circuit has held, even a few minutes is sufficient. You know, the makeup itself is a substance that's applied on the face, and it's the designs themselves that are at issue. And so I don't think there, you know, based upon the clear precedent that we have for makeup artistry being protectable, based upon analogous cases that discuss makeup artistry on the human body, and based upon the clear language of the Copyright Act, and the legislative history that wanted this to be very broad, and wanted a tangible medium of expression to include essentially anything, and the language that Cullen's counsel refers to about different things invented in the future, that has nothing to do with this case. That was, the legislature was attempting to broaden the scope even further, given the digital age. Why don't you finish up, please? Why don't you finish up? Okay. So, based upon the foregoing, we would respectfully ask that this court affirm the lower court's decision to preempt and dismiss the state law claims based on its reasoning set forth therein about the application of the makeup, as well as, although the judge focused on the application of the makeup, the judge also referred to the drawing itself. But we take the position that the makeup artistry is clearly fixed in the client photograph itself, and there can be no credible argument that it hasn't been fixed. All right. Thank you. The rest are now agreed. Thank you. We'll hear the rebuttal. Thank you, Your Honor. Let me get to as many of those points as I can. First of all, my colleague cited Briarpatch and Baltimore Orioles as clear legal precedent of the analysis for when a work is swallowed by the complete preemption doctrine. The difficulty in both Briarpatch and Baltimore Orioles is that at no point did either party argue, because they couldn't, that the work at issue might be excluded pursuant to 301B1. In Baltimore Orioles, it was a live broadcast that had clearly been covered by the definition under Section 101. And in Briarpatch, it was a movie, The Thin Red Line, which is clearly an audiovisual work under 102A. Similarly, it's a total distortion of the law to claim that there's clear precedent for this. Carroll was the first court, Southern District, in 2000 to consider this issue. And in fact, it didn't consider the issue. The record of Carroll, and indeed in the opinion, shows that there were two lawyers. You have one minute. You have one minute. Thank you very much. Two lawyers who opined that makeup artistry was not copyrightable. One lawyer opined that it was. And for some reason in litigation itself, the court makes clearly that there was no disagreement. And as the Supreme Court's admonition tells us in Webster v. Fall, questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedent. Mehron's analysis is even slimmer. It simply cites Carroll for a proposition that it did not, clearly did not decide. Now, the question of the intellectual property rights flowing from the photograph itself. 301b3 covers that. And there is an express exclusion from preemption where uses will deviate from the average use of a copyrighted work. You're out of time. Why don't you finish up, Mr. Moody? Well, let me just say that Appellant respectfully requests that this court reverse the lower court for the reasons asserted during this argument and the reasons asserted in Appellant's brief and remand the two state causes of action to state court. Thank you very much. Thank you. We'll reserve decision.